JORDAN, Circuit Judge, concurring in part and dissenting in part.
The materiality standard announced by the majority generally makes sense to me, and I agree with its adoption. But this case, because of its many peculiarities, is not a good vehicle for trying to comprehensively lay out the parameters of that standard in challenges to the implementation of an individualized education plan (an IEP) under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. (the IDEA). Under the circumstances, I would say less, and not more, about the materiality standard and let it develop over time on a case-by-case basis. On the merits, I conclude-as did the administrative law judge-that the school board materially failed to implement L.J.'s stay-put IEP in violation of the IDEA.
I
Let me begin with common ground. I concur in and join Parts I, II, III, and IV.A of the majority opinion. And, as noted, I agree with the majority's adoption of a materiality standard in IDEA cases challenging the implementation of an IEP. Although this standard defies bright-line pronouncements, materiality is a concept well-known in law and I believe it can prove workable in the IDEA context. Indeed, there appears to be uniform agreement that materiality is the appropriate standard. Our sister circuits use a materiality standard of one form or another. See Houston Ind. School District v. Bobby R. , 200 F.3d 341, 349 (5th Cir. 2000) ; Neosho R-V School District v. Clark , 315 F.3d 1022, 1027 n.3 (8th Cir. 2003) ; Couture v. Bd. of Ed. of Albuquerque Public Schools , 535 F.3d 1243, 1252 (10th Cir. 2008) ; Van Duyn v. Baker School District , 502 F.3d 811, 820-22 (9th Cir. 2007) ; Sumter County School District v. Heffernan , 642 F.3d 478, 484 (4th Cir. 2011). The administrative law judge applied a materiality standard taken from Bobby R. and Van Duyn , and so did the district court. See D.E. 1-2 at ¶ 349;
*1221 D.E. 87 at 9-11. L.J.'s mother does not take issue with a materiality standard, though she phrases the standard somewhat differently than the majority. See Br. for Appellant at 28-31.
In a common-law system like ours, judicially-created legal standards-even those formulated to apply a statutory command-can take on a doctrinal life of their own over time. So it matters how we phrase the materiality standard at the beginning. Instead of asking "whether a school has failed to implement substantial or significant portions of the child's IEP," Maj. Op. at 1213, I would use the Ninth Circuit's formulation: "A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." Van Duyn , 502 F.3d at 822. Accord Holman v. District of Columbia , 153 F.Supp. 3d 386, 390 (D.D.C. 2016) ; Colon-Vazquez v. Dept. of Ed. of Puerto Rico , 46 F.Supp. 3d 132, 143-44 (D.P.R. 2014). This difference in language is subtle, but it appropriately tilts slightly in favor of the child (for whose benefit the IDEA was enacted) and may make the difference in future cases at the margin. I therefore do not join Part IV.B of the majority opinion.[1]
I appreciate the majority's attempt in Part IV.C to provide some descriptive guidelines for application of the materiality standard. But because this case is unique in many respects, it does not strike me as a good vehicle in which to lay down general markers. First, this case involves a stay-put IEP which was developed in 2002, when L.J. was about 9 years old. Second, the school years in dispute are 2006-07 and 2007-08, meaning that the 2002 IEP was still in place 4-5 years later, when L.J. was 13-14 years old and in middle school. Third, the stay-put IEP was found to satisfy the IDEA by the district court in a separate case, and it remains the governing document despite the passage of time. Fourth, one of the major problems was L.J.'s failure to attend school on a regular basis. For example, in the 2006-07 school year L.J. missed 144 days. See D.E. 1-2 at ¶¶ 61, 69. These absences were so severe that the matter was referred to the state attorney's office for investigation and possible criminal prosecution for truancy, though no action was ultimately taken. See id. at ¶¶ 235-38. Fifth, by the time the administrative law judge was able to hold the due process hearing-which consisted of 28 witnesses, 590 exhibits, and 24 volumes of transcripts-and rule on the implementation claims, L.J. was about 18 years old. By the time the district court ruled on the school district's motion for judgment on the administrative record, L.J. was about 23 years old. And now, by the time we have ruled in this appeal, L.J. is about 26 years old.
In sum, this is a very atypical (and hopefully rare) implementation case. Aside from the enunciation of the materiality standard, I doubt that it will prove a helpful analogy in other IDEA implementation disputes. I would therefore let our concrete application of the standard here do the bulk of the necessary interpretive work. See generally Cass R. Sunstein, One Case at a Time: Judicial Minimalism on the Supreme Court 3-6 (1999).[2]
*1222 II
On the merits, I part company with the majority and respectfully dissent from Part V of its opinion. I agree with the administrative law judge that the school board materially failed to implement L.J.'s stay-put IEP. I come to this conclusion somewhat reluctantly. I acknowledge the difficulties the school board faced in trying to maintain the viability of a 2002 stay-put IEP for a number of years as L.J. moved into middle school, difficulties that were compounded by L.J.'s absenteeism.
The district court believed that, for stay-put IEPs, "the materiality of the deviation is necessarily measured by reference to the feasibility and utility of its continued implementation in the new setting in light of the goals of the IEP." D.E. 87 at 10. The majority seems to agree, as it too concludes that there was no material deviation.
I'm not sure the district court's approach was the correct one. For starters, it is unclear to me how a court is supposed to measure educational "utility." In addition, the district court's reliance on "common sense," see D.E. 87 at 52, seems misplaced. "The recognized and defined special needs of the child and the educational goals originally set by the parents and by the professional educators must be respected. Protestations that educational methodology proven to be helpful to the child in the past are now impossible must be evaluated with a critical eye to ensure that motivations other than those compatible with the [IDEA], such as bureaucratic inertia, are not driving the decision." John M. v. Bd. of Education of Evanston Township High School District , 502 F.3d 708, 715 (7th Cir. 2007) (addressing a stay-put IEP).
Let's consider one of the special education services required by the IEP pursuant to the parties' settlement agreement in October of 2002 - the provision of lesson plans and study material to L.J.'s mother 2 weeks in advance, "but no less than" 7 days in advance. D.E. 87 at 55. The administrative law judge found that the school board failed to provide L.J.'s mother with the materials as required by the IEP. The district court agreed, but explained that the administrative law judge did not determine the materiality of the deviation, and concluded based on its own analysis that the deviation was not material.
With respect to the lesson plans, the district court found that on average they were provided to L.J.'s mother approximately 4.42 days in advance. That, thought the district court, made the implementation failure non-material. See id. at 56. I disagree. It is not just the median average of the delay that matters, and a review of the 6-week period from September 28, 2007, to November 2, 2007, explains why the district court's singular mathematical focus was in my view incomplete.
According to the district court's own appendix, see id. at Appendix A, the school board was late in providing 25 of 30 lesson plans during that six-week period. In 2 of the weeks all of the lesson plans were late, and in 3 of the weeks, 4 of the 5 lesson plans were late. In total, lesson plans were late 83% of the time. And there is more. Of *1223 the 25 lesson plans that were submitted late in this 6-week period, 12 of them were provided only 3 or 4 days in advance. That means that the time required by the IEP for the lesson plans was generally cut in half for these 12 classes. So, even if the focus is just on numbers, the district court's median average does not tell the whole story.
The materiality standard is both quantitative and qualitative. See Bobby R. , 200 F.3d at 349 ("a party challenging the implementation of an IEP must ... demonstrate that the school board ... failed to implement substantial or significant provisions of the IEP") (emphasis added). Lesson plans were required 7 days in advance of each class so that L.J.'s mother would have sufficient time to go over each particular class with L.J. If each lesson plan had been provided 7 days in advance of the class, then L.J.'s mother could presumably have had enough time to review the upcoming lesson herself and then schedule time to go over the lesson with L.J. Every succeeding late lesson plan aggravated the problems created by the previous late lesson plans. If we are using "common sense," it seems to me that all of these delays in providing the lesson plans were significant, and substantially affected (or at least potentially affected) L.J.'s ability to succeed.
Again, I acknowledge and do not wish to minimize the difficulties caused by L.J.'s absences. Nevertheless, the school board's failure over a 6-week period to implement the IEP's requirement that lesson plans be provided at least 7 days in advance was, in my book, material. Compare Heffernan , 642 F.3d at 481, 485-86 (school district which provided 7.5-10 hours a week of applied behavioral therapy for a 3-4 month period materially failed to implement IEP which called for 15 hours a week of such therapy); Van Duyn , 502 F.3d at 823 (where IEP required that student receive 8-10 hours of math instruction per week, school board materially failed to implement that requirement by initially providing 5 hours less than required per week).
III
Because I conclude that the school board materially failed to implement L.J.'s stay-put IEP, I would remand to the district court so that it could determine, given L.J.'s age and the passage of time, what the appropriate remedy should be.

There does not exist a circuit split on the use of a materiality standard in IDEA implementation challenges, and I am not suggesting that we should create one. Nevertheless, this is our first published opinion on the subject, and we have a choice about what formulation of the materiality standard to embrace.

I am sympathetic to the majority's desire to create two distinct analytical boxes, one for challenges to the substance (i.e., content) of an IEP and the other for challenges to the implementation of an IEP. The majority opinion does a good job in Part IV.D of explaining why it believes Endrew F. v. Douglas County School District , --- U.S. ----, 137 S.Ct. 988, 197 L.Ed.2d 335 (2017), does not govern the implementation challenges box. I do not disagree with the majority, but I'm not sure we can avoid some overlap between its substantive and implementation boxes. If, as the majority says, a child's actual educational progress (or lack thereof) is a factor in the materiality analysis, then it is difficult to keep Endrew F. completely out of the implementation analysis.